IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

BILLY T. BROWN                                                    PLAINTIFF

v.                              No. 5:11CV00107 KGB-HDY

MICHAEL J. ASTRUE, Commissioner,
Social Security Administration                                   DEFENDANT

## OPINION AND ORDER

This case considers plaintiff-claimant Billy T. Brown's appeal of defendant Commissioner Michael J. Astrue's denial of Brown's applications for Disability Income Benefits (DIB) and Supplemental Security Income (SSI). Brown asked the court to reverse the Commissioner's decision and remand his case to the Social Security Administration (SSA) for the award of benefits. After considering the record, the arguments of the parties, and the applicable law, this court affirms the Commissioner's decision.

### I.    Scope of Judicial Review for a Disability-Benefits Appeal

When reviewing a decision denying an application for disability benefits, the court must determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner made a legal error. *See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (stating that the court's "review of the Commissioner's denial of benefits is limited to whether the decision is 'supported by

substantial evidence in the record as a whole'"); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled."). Substantial evidence is more than a mere scintilla of evidence; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Slusser*, 557 F.3d at 925. In determining whether substantial evidence supports the Commissioner's decision, the court must consider evidence that detracts from the Commissioner's decision as well as evidence that supports the decision, but the court may not reverse the Commissioner's decision simply because substantial evidence supports a contrary decision. *See Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).

## II.    The Disputed Issues

In this case, the parties do not dispute that Brown exhausted his administrative remedies, *see Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating that "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions), or that the Commissioner's administrative law judge (ALJ) followed the required five-step process for determining whether a DIB/SSI

2

claimant is disabled, *see* 20 C.F.R. §§ 404.1520 & 416.920 (setting forth the five-step sequential evaluation process used for determining whether a claimant is disabled and entitled to disability benefits). Instead, Brown complained about the ALJ's determination about his mental impairment.

## III.    The Commissioner's Decision

After considering Brown's DIB/SSI applications, the ALJ determined that despite having severe impairments—degenerative disc disease, pseudothrombocytopenia (also called platelet clumping), polysubstance abuse, and anxiety disorder with agoraphobia—Brown had the residual functional capacity (RFC) to perform less than the full range of light work. SSA record at p. 21. Relevant to this judicial review, the ALJ found that Brown could understand, remember, and carry out simple job instructions; make judgments in simple work-related situations; and respond appropriately to co-workers and supervisors. The ALJ determined that Brown must work primarily in isolation or seclusion from other workers, with very little if any contact with other workers during the workday, and that Brown was incapable of dealing with the general public or responding appropriately to minor changes in the usual work routine. *Id*. at p. 21. The ALJ determined that Brown could perform work that existed in the national economy, and thus concluded that Brown was not disabled under the Social Security Act. *Id*. at p. 27.

3

## IV.    Substantial Evidence Supports the Commissioner's Conclusion

Previously, Brown was self-employed as a carpenter. *Id*. at p. 162. Brown alleged

he became disabled on February 15, 2000, *id*. at p. 123 & 130, due to back problems and a

blood disorder, *id*. at p. 141. Brown initially reported that these conditions caused him to

stop working on October 15, 2002, *id*. at p. 141, but he later reported working until August

2008, *id*. at p. 162.

Brown did not attribute disability to mental impairment until November 7, 2008.

*Id*. at p. 175 (complaining about depression and anxiety). At that point, Brown had

received no mental health treatment, except for anti-anxiety medication prescribed by his

primary care physician. The day before his hearing, Brown obtained an opinion from a

psychiatrist, opining that Brown would have difficultly working at a regular job on a

sustained basis. *Id*. at p. 398. The ALJ rejected the decision and determined that Brown's

mental impairment did not prevent him from working.

The following evidence supports the ALJ's determination: (1) Dr. David Foscue's

treatment notes, (2) the results of a lumbar myelogram, (3) Dr. Asif Masood's treatment

notes, (4) Dr. Shamim Malik's treatment notes, (5) Dr. Jim Takach's physical RFC

assessment, and (6) vocational expert testimony.

Dr. Foscue's treatment notes. Dr. Foscue is a primary care physician who treated

Brown since 2001. Dr. Foscue diagnosed Brown with degenerative joint disease on

4

July 6, 2001. *Id*. at p. 273.  Because Brown complained about lower back pain, Dr. Foscue

referred Brown to a neurosurgeon who ordered a MRI of Brown's lumbar spine.  The

neurosurgeon reported that the MRI showed "very little" — "just a minimal defect at L4-5

on the right side" — and characterized the results as "not enough to cause his pain."  *Id*. at

p. 208.  Because of Brown's "persistent complaints of pain," *id*. at p. 208, the neurosurgeon

ordered a MRI of the thoracic spine in effort to account for Brown's complaints; however,

the MRI was normal, *id*. at p. 199.  This evidence did not support Brown's allegation of

disabling lower back pain.  Instead, it supported the ALJ's determination that Brown can

work.

 The lumbar myelogram.   A  subsequent  lumbar  myelogram  also  failed  to

substantiate Brown's allegation of disabling lower back pain.  *Id*. at p. 235.  A myelogram

uses a contrast to detect pathology of the spinal cord.  *See* J.E. Schmidt, M.D., Attorney's

Dictionary of Med. M-312. The myelogram of Brown's lumbar spine showed degenerative

changes at L4-5 and intact nerve root sleeves bilaterally at all levels.  SSA record at p. 235.

Compromise of a nerve root can cause severe pain, *see* 3 The Gale Encyclopedia of Med.

2111 (4th ed.) (explaining that pressure on a spinal nerve can cause considerable pain), but

Brown's myelogram did not show a compromise nerve root.  The  myelogram supported

the ALJ's determination that Brown can work because it did not substantiate Brown's

allegation of disabling lower back pain.

Dr. Masood's treatment notes. Dr. Masood is an oncologist. Dr. Foscue referred Brown to Dr. Masood when blood work showed a very low platelet count. Dr. Foscue suspected Brown had thrombocytopenia, a "condition marked by an abnormal decrease in the number of blood platelets." J.E. Schmidt, M.D., 5 Atty's Dictionary of Med. T-83. After additional lab work, Dr. Masood determined that Brown had "only pseudothrombocytopenia." SSA record at p. 355. Pseudothrombocytopenia equates to a false decrease in platelets and has no clinical significance. *See* Dino Veneri, Massimo Franchini, Federica Randon, Ilaria Nichele, Giovanni Pizzolo & Achille Ambrosetti, *Thrombocytopenias: a clinical point of view*, 7 Blood Transfusion 75, 75 (2009). Thus, Dr. Masood's treatment notes supported the ALJ's decision because pseudothrombocytopenia did not prevent Brown from working.

Dr. Takach's physical RFC assessment. Dr. Takach is a consulting physician who reviewed Brown's medical records. Dr. Takach opined that Brown retained the ability to perform light work. SSA record at p. 335. Dr. Takach's opinion supported the ALJ's decision because the ALJ determined that Brown could perform light work.

Dr. Malik's treatment notes. Dr. Malik is a staff psychiatrist for the Southeast Arkansas Behavioral Healthcare System. Dr. Malik first saw Brown on April 13, 2009—nine years after Brown's alleged on-set date. During that visit, Brown reported that he was unemployed and trying to get on disability. *Id*. at p. 387. Brown reported a history

6

of alcohol abuse, illegal drug use, and growing marijuana, but no mental health treatment. *Id*. Dr. Malik found Brown's perception was "within normal limits." *Id*. at p. 389. Dr. Malik also found that Brown's memory, concentration, impulse control, insight, and judgment were grossly intact. *Id*. at p. 390. Dr. Malik diagnosed Brown with panic disorder with agoraphobia, polysubstance dependence in early remission (marijuana, methamphetamine, and cocaine), and alcohol abuse. *Id*. One month later, Dr. Malik reported the same findings—grossly intact memory, concentration, impulse control, insight, and judgment. *Id*. at p. 384. Dr. Malik's treatment notes supported the ALJ's decision because Dr. Malik documented no symptoms preventing Brown from working.

Vocational expert testimony. The vocational expert at Brown's hearing testified that a person with Brown's RFC could work as an assembler of small products, a sewing machine operator, or a bottling line attendant. *Id*. at. p. 58. The vocational expert testified that these jobs existed in significant numbers in the national economy; respectively, 2 million nationwide and 54,000 in Arkansas; 370,000 nationwide and 5,100 in Arkansas; and, 14,000 nationwide and 200 in Arkansas. *Id*. at p. 60. This testimony supported the ALJ's decision because it indicated Brown could do work that existed in significant numbers in the national economy.

The foregoing evidence constituted more than a mere scintilla of evidence. A reasonable mind would accept this evidence as adequate to support the conclusion that

7

Brown is not disabled. Thus, the foregoing evidence constituted substantial evidence.

**The Commissioner's decision comports with applicable legal standards**. Despite substantial evidence, Brown argued that the ALJ erred in weighing Dr. Malik's opinion that he could not work on a sustained basis. Docket entry # 10, pp. 17-23. Dr. Malik set forth his opinion in a mental impairment questionnaire. SSA record at p. 398. Therein, Dr. Malik stated that individual therapy and medication management had resulted in minimal progress in reducing Brown's anxiety. *Id*. at p. 400. Dr. Malik opined that mental impairment would cause Brown to miss work more than three times per month. *Id*. at p. 401. This opinion is significant because the vocational expert testified that a person cannot keep a job if he misses work more than two times per month. *Id*. at p. 61. The ALJ gave Dr. Malik's opinion little weight in determining Brown's RFC. *Id*. at p. 22. Because the ALJ gave Dr. Malik's opinion less than controlling weight, Brown argued that substantial evidence did not support the Commissioner's conclusion that he was not disabled. Brown also contended the Commissioner's decision did not comport with required legal standards.

The Commissioner's regulations call for "more weight" for an opinion from a treating physician than a non-treating physician because those "sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical

8

evidence that cannot be obtained from the objective medical findings alone or from reports

of individual examinations, such as consultative examinations or brief hospitalizations."

20 C.F.R. § 404.1527 (DIB); 20 C.F.R. § 416.927(d)(2) (SSI).  The regulations direct the ALJ

to give a treating-source opinion controlling weight so long as the opinion is

"well-supported by medically acceptable clinical and laboratory diagnostic techniques and

is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §

404.1527 (DIB); 20 C.F.R. § 416.927(d)(2) (SSI).  If the ALJ does not give a treating source

opinion controlling weight, the ALJ must provide good reasons for not doing so.  *See* 20

C.F.R. § 404.1527 (DIB); 20 C.F.R. § 416.927(d)(2) (SSI).

The ALJ in this case provided good reasons.  As the primary reason, the ALJ

observed that Dr. Malik's opinion was "inconsistent with his own findings and progress

notes."  SSA record at p. 22.  The ALJ explained as shown below:

On May 19, 2009, Dr. Malik noted the claimant reported feeling fine and
using Xanax that was prescribed by his primary care physician, Dr. Foscue.
Dr. Malik did not prescribe any additional treatment for the claimant.  Dr.
Malik said the claimant's polysubstance abuse is in remission but it does not
mention the claimant is still drinking.

*Id.* at p. 22.  The record supported the ALJ's reasoning.  Dr. Malik prepared the mental

impairment questionnaire on October 19, 2009—the day before Brown's hearing.  Dr.

Malik's responses were based on examinations on April 13, 2009 and May 14, 2009.  *Id.* at

p. 398.  Dr. Malik's treatment notes for those days recorded the same findings: perception

9

within normal limits; and grossly intact memory, concentration, impulse control, insight, and judgment. *Id*. at pp. 384 & 390. Dr. Malik recorded no observations indicating that Brown could not work on a sustained basis.

Because there are no treatment notes between Dr. Malik's last examination—May 19, 2009—and the mental impairment questionnaire—October 19, 2001—the treatment notes are more probative of Brown's condition than the opinions in the questionnaire because the treatment notes were made contemporaneously with mental health examinations. Dr. Malik indicated in the questionnaire that Brown had frequent deficiencies in concentration, persistence or pace resulting in failure to complete tasks in a timely manner, but Dr. Malik's examination findings contradicted the opinion. Dr. Malik also indicated in the questionnaire that Brown had continual episodes of decompensation, but the record contained no evidence of psychiatric emergency, decompensation, or hospitalization. Instead, the record indicated that Brown lived independently since his alleged on-set date.

In contrast, Dr. Foscue—who treated Brown since 2001—consistently reported no mental or psychological abnormalities. *See id*. at p. 273 (July 6, 2001); p. 278 (Aug. 7, 2001); pp. 287-88 (Dec. 13, 2001); pp. 291-92 (Jan. 8, 2002); p. 294. (Jan. 22, 2002); pp. 300-01 (July 18, 2002); p. 304 (July 14, 2008); p. 349 (Oct. 1, 2008); p. 372 (Feb. 23, 2009); & p. 366 (May 4, 2009). Although Dr. Foscue is not a mental health profession, he treated Brown for

10

anxiety since 2001, and thus provided a longitudinal perspective of Brown's mental health.

As an additional reason for giving Dr. Malik's opinion little weight, the ALJ made

the following comments:

> Moreover, the possibility always exists that a psychiatrist may
> express an opinion in an effort to assist a patient with whom he
> sympathizes for one reason or another. Another reality which
> should be mentioned is that patients can be quite insistent and
> demanding in seeking supportive notes or reports from their
> psychiatrists, who might provide such a note in order to satisfy
> their patient's [sic] request and avoid unnecessary
> doctor/patient tension. While it is difficult to confirm the
> presence of such motives, it is a possibility that should be noted
> pertaining to Dr. Malik's statements.

*Id.* at p. 22. Although Brown suggested that the ALJ played "Solomon" in considering Dr.

Malik's opinion, docket entry # 10, p. 23, the ALJ's opinion reflects a careful comparison of

the opinions expressed in the mental impairment questionnaire with Dr. Malik's treatment

notes. The comparison is reflected in the ALJ's RFC assessment. For example, the ALJ's

opinion recognized that panic disorder can interfere with a person's work performance and

relationships with coworkers because people who experience frequent panic attacks may

fear embarrassment and humiliation in the midst of coworkers. *See* Am. Psychiatric Ass'n,

Diagnostic & Statistical Manual of Mental Disorders 439-42 (4th ed, text rev. 2000)

(discussing differences in social phobias and panic disorder with agoraphobia). The ALJ

responded by restricting Brown to work without contact with the general public and little

if any contact with other workers. SSA record at p. 21. By doing so, the ALJ gave

11

significant weight to Dr. Malik's clinical findings.  To the extent Brown complained about the ALJ's failure to cite applicable regulations in the unfavorable decision, that omission is not fatal to this case because the decision reflects the consideration of regulatory factors. *See* 20 C.F.R. § 404.1527 (DIB); 20 C.F.R. § 416.927(d)(2) (SSI) (listing factors used in considering medical opinions: examining relationship, treatment relationship, length of treatment relationship and frequency of examination, nature and extent of treatment relationship, supportability, consistency and specialization).  Notwithstanding the ALJ's other reasons for rejecting the opinion set forth in the mental impairment questionnaire, the inconsistency of the opinion with treatment notes sufficiently supports the ALJ's consideration of the opinion.  The ALJ did not err in considering Dr. Malik's opinion.

**V.    Conclusion**

Having determined substantial evidence supports the Commissioner's denial of Brown's applications for disability benefits, and the Commissioner made no legal error, the court DENIES Brown's request for relief and AFFIRMS the Commissioner's decision.

IT IS SO ORDERED this $\underline{11}$ th day of September, 2012.

*Kristine G. Baker*

KRISTINE G. BAKER
UNITED STATES DISTRICT JUDGE

12